820 So.2d 342 (2002)
Nury M. SUAREZ, individually, Appellant,
v.
Jose GONZALEZ, individually, Appellee.
No. 4D01-671.
District Court of Appeal of Florida, Fourth District.
March 27, 2002.
*343 Richard A. Sherman and Rosemary B. Wilder of Law Offices of Richard A. Sherman, P.A., Fort Lauderdale, J. William Webb and Michael P. Rudd of Hightower & Rudd, P.A., Miami, for appellant.
Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, Jeffrey M. Fenster and Stacie L. Cohen of Fenster and Faerber, P.A., Plantation, for appellee.

ON MOTION FOR REHEARING
GROSS, J.
We deny the motion for rehearing, but for the purpose of clarification, withdraw our previously issued opinion and substitute the following.
Nury M. Suarez appeals from a jury verdict finding her 55% negligent for injuries to the plaintiff, Jose Gonzalez, a tenant living in Suarez's garage apartment, and awarding Gonzalez $2,728,559.90 in compensatory damages. Gonzalez sustained a spinal cord injury, resulting in partial paralysis of his arms and legs, when a kitchen cabinet fell from the wall and struck him on the head.
When Suarez purchased her home in 1995, the garage was already partially converted into an apartment. In 1997, she made improvements in the apartment, including the hanging of the kitchen cabinet that later fell onto Gonzalez.
The cabinet was installed by a man hired by Suarez's daughter-in-law. The daughter-in-law saw the man passing by on the street with some cabinets in his van. *344 The daughter-in-law hired the man to make improvements to the apartment, including hanging the cabinets in the kitchen. She signed no contract and paid him in cash. Neither Suarez nor her daughter-in-law could remember the name of the handyman, the name of his company or his business name, nor whether he was licensed. Suarez obtained no permit for the job.[1]
We affirm all issues on the appeal and the cross-appeal and write to address two matters.
First, Suarez argues that because the kitchen cabinet was installed by an independent contractor, she cannot be held liable for Gonzalez's injuries as a matter of law. We hold that there was evidence at trial to support Suarez's liability on the theory that she negligently selected the contractor.
Generally, the employer of an independent contractor is not liable for the negligence of the independent contractor because the employer has no control over the manner in which the work is done. 2A FLA. JUR.2D Agency & Employment § 138 (1998); see St. Johns & Halifax R.R. Co. v. Shalley, 33 Fla. 397, 14 So. 890, 892 (1894); Singer v. Star, 510 So.2d 637, 639-40 (Fla. 4th DCA 1987). However, "the general rule is riddled with exceptions." City of Coral Gables v. Prats, 502 So.2d 969, 971 (Fla. 3d DCA 1987).
One such exception is where the employer is negligent "in selecting, instructing, or supervising the contractor."[2]McCall v. Alabama Bruno's, Inc., 647 So.2d 175, 177 (Fla. 1st DCA 1994); see RESTATEMENT (SECOND) OF TORTS §§ 409, 411 (1965) (hereinafter "RESTATEMENT"); W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 71 at 510 (5th ed.1984). "`The rule has been widely adopted that an employer of an independent contractor may be liable to one injured as a result of the contractor's fault where it is shown that the employer was negligent in selecting a careless or incompetent person with whom to contract.'" W. Stock Ctr., Inc. v. Sevit, Inc., 195 Colo. 372, 578 P.2d 1045, 1048 (1978) (en banc) (quoting W.E. Shipley, Annotation, When is Employer Chargeable with Negligence in Hiring Careless, Reckless, or Incompetent Independent Contractor, 8 A.L.R. 267 (1949)); see Arthur v. Holy Rosary Credit Union, 139 N.H. 463, 656 A.2d 830, 834 (1995).
*345 This cause of action of "negligent selection" is grounded in section 411 of the Restatement (Second) of Torts. That section states:
An employer is subject for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor
(a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or
(b) to perform any duty which the employer owes to third persons.
As noted by the Supreme Court of Colorado, "[c]ourts across the country have uniformly adopted this rule." W. Stock Ctr., Inc., 578 P.2d at 1048. See, e.g., Camargo v. Tjaarda Dairy, 25 Cal.4th 1235, 108 Cal.Rptr.2d 617, 25 P.3d 1096, 1099 (2001); Gomien v. Wear-Ever Aluminum, Inc., 50 Ill.2d 19, 276 N.E.2d 336, 338 (1971); Dexter v. Town of Norway, 715 A.2d 169, 171 n. 4 (Me.1998); Schlenk v. Northwestern Bell Tel. Co., 329 N.W.2d 605, 613 (N.D. 1983); Wilk v. Haus, 313 Pa.Super. 479, 460 A.2d 288, 294 (1983).
"The amount of care which should be exercised in selecting an independent contractor is that which a reasonable man would exercise under the circumstances, and therefore varies as the circumstances vary." RESTATEMENT § 411, cmt. c. The Restatement identifies three factors which are important in fixing the amount of care required:
(1) the danger to which others will be exposed if the contractor's work is not properly done; (2) the character of the work to be done-whether the work lies within the competence of the average man or is work which can be properly done only be persons possessing special skill and training; and (3) the existence of a relation between the parties which imposes upon the one a peculiar duty of protecting the other.
Id.; Golden v. Conway, 55 Cal.App.3d 948, 957, 128 Cal.Rptr. 69 (1st Dist.Ct.App. 1976); Reeves v. Kmart Corp., 229 Mich. App. 466, 582 N.W.2d 841, 845 n. 4 (1998); see Matanuska Elec. Ass'n v. Johnson, 386 P.2d 698, 703 (Alaska.1963) ("whether reasonable care was exercised depends upon the facts of each particular case"); Tansey v. Robinson, 24 Ill.App.2d 227, 164 N.E.2d 272, 276-77 (1960).
Regarding the first factor, "the amount of care which should be required is proportionate to the danger involved in failing to use it." RESTATEMENT § 411, cmt. c. Thus, a landowner must exercise greater care in selecting a skilled contractor for the installation of an elevator than for the construction of a hallway floor; any injury resulting from an improperly laid floor would be trivial compared to an injury sustained from plummeting down an elevator shaft. See id.
The Restatement's first factor for gauging the appropriate standard of care has little application in this case. Hanging kitchen cabinets is not an "inherently dangerous" activity. Such an activity is analogous to the Restatement's examples of laying a hallway floor or building seats in a theater, where no heightened standard of care is required.
The Restatement's second factor for determining the amount of care required in hiring an independent contractor focuses on the "extent of the employer's knowledge and experience in the field of work to be done." RESTATEMENT § 411, cmt. c. The Restatement notes that "an inexperienced widow employing a contractor to build a house is not to be expected to have the same information concerning the competence and carefulness of building contractors in the community, or to exercise the *346 same judgment, as would a bank seeking to build the same house." Id.
For run-of-the-mill activities not involving highly dangerous or specialized work, an employer is required to make only minimal inquiry into the qualifications of an independent contractor.
[O]ne who employs a carpenter to repair the ceilings of his shop or to install plumbing in his hotel is entitled to assume that a carpenter or plumber of good reputation is competent to do such work safely. In such a case, there is no duty to make an elaborate investigation as to the competence of the carpenter or plumber. Indeed, there is no duty to take any great pains to ascertain whether his reputation is or is not good. The fact that he is a carpenter or plumber is sufficient, unless the employer knows that the contractor's reputation is bad or knows of facts which should lead him to realize that the contractor is not competent.
RESTATEMENT § 411, cmt. c.; Golden, 55 Cal.App.3d at 957 n. 4, 128 Cal.Rptr. 69.
For the typical homeowner, there is no duty to make a specific, detailed inquiry into the qualifications of a contractor hired to perform a non-dangerous activity. Where someone holds himself out in the community as a contractor, a prospective employer has the "right to rely on the presumption that the contractor will perform his work in a manner as to discharge his legal duties owing to his employers and third persons." Schlenk, 329 N.W.2d at 614. Most employers of contractors do not have "the ability to weigh the technical factors of skill, experience and adequacy of the equipment possessed by contractors." Matanuska, 386 P.2d at 703. For example, as the Supreme Court of Alaska has written:
The average employer hiring a contractor to construct, repair, move or demolish a residence, for example, will not be qualified to judge of his skill, experience or the adequacy of his equipment. The fact that he usually operates in the area under a license and business name and holds himself out as being able to perform the particular work to be done is all the average employer has as a guide to competency.
Id. at 703-04.
It is the third Restatement factor that clearly applies to this case and imposed a greater duty upon Suarez to inquire into the qualifications of the contractor than would be required by application of only the second Restatement factor. The third factor looks to the relationship between the parties to see if the law imposes a duty on an employer to exercise care "to ascertain whether the contractor" who is hired "is competent to do the work safely." RESTATEMENT § 411, cmt. c.
In Florida, the landlord-tenant relationship imposes a nondelegable duty of care upon a landlord who undertakes to make repairs or improvements for the benefit of a tenant. See Easton v. Weir, 125 So.2d 115 (Fla. 2d DCA 1960). Although the nondelegable duty was not raised in this case, it derives from a relationship where a residential landlord has a "peculiar duty" of protecting the tenant. RESTATEMENT § 411, cmt. c.
This duty requires a landlord to use reasonable care in selecting a competent independent contractor to make improvements or repairs in the premises occupied by a tenant. "[T]he employer must choose `a contractor who possesses the knowledge, skill, experience, and available equipment which a reasonable man would realize that a contractor must have in order to do the work which he is employed to do without creating unreasonable risk of injury to others.'" W. Stock Ctr., 578 P.2d *347 at 1048 (quoting the RESTATEMENT § 411, cmt. a).
At the time she hired the contractor, it was reasonably foreseeable that the apartment would eventually be occupied by a tenant. W. Stock Ctr., 578 P.2d at 1048. Suarez made no inquiry into the contractor's qualifications. She obtained no references. She did not even make the minimal inquiry of whether the contractor operated in the area "under a license and a business name." Matanuska, 386 P.2d at 704. She could not recall his name, or whether he operated under any business name. She did not know whether he held himself out in the community as a carpenter or handyman for interior improvements. She had no basis for knowing whether the contractor had the knowledge, skill, experience, and available equipment to hang the cabinets. The evidence supports the jury's finding that Suarez was negligent in selecting the contractor.
Suarez raises a separate argument that the trial court erred in excluding the anonymous independent contractor from the verdict form so that the jury could assess comparative fault pursuant to section 768.81, Florida Statutes (2000), and Fabre v. Marin, 623 So.2d 1182 (Fla.1993). Section 768.81 and Fabre apply to incidents involving joint tortfeasors. See Beverly Enterprises-Florida, Inc. v. McVey, 739 So.2d 646, 650 (Fla. 2d DCA 1999); J.R. Brooks & Son, Inc. v. Quiroz, 707 So.2d 861, 863 (Fla. 3d DCA 1998). Section 768.81(3) requires that the court enter judgment against "each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability," subject to certain statutory exceptions.
Here, because Suarez negligently hired the "phantom" contractor, she is liable for his negligence to the same extent as if she had done the work herself. This is similar to situations of vicarious liability, such as master and servant, or the breach of a nondelegable duty, where there are no logical bases for apportioning liability into percentages of fault. Liability for damages may not be apportioned to a nonparty defendant where that liability is vicarious in nature. See Nash v. Wells Fargo Guard Servs., 678 So.2d 1262, 1264 (Fla. 1996); Quiroz, 707 So.2d at 863; see also PROSSER § 52, at 346 (no apportionment for vicarious liability). Therefore, the comparative fault statute and Fabre do not apply.
AFFIRMED.
STONE and HAZOURI, JJ., concur.
NOTES
[1] Because Suarez's daughter-in-law acted as her agent in the hiring of the contractor, the daughter-in-law's negligence is imputed to Suarez, as the principal. See Adelhelm v. Dougherty, 129 Fla. 680, 176 So. 775, 777 (1937).
[2] This case might have been decided under another exception to the general rule that an employer may not be held liable for the negligence of an independent contractor. That exception occurs where the employer operates within a relationship that imposes a duty upon him which cannot be delegated to an independent contractor, so that the employer is liable even for the most "carefully selected and competent independent contractor." RESTATEMENT (SECOND) OF TORTS § 411, cmt. c (1965); see City of Coral Gables v. Prats, 502 So.2d 969, 971 (Fla. 3d DCA 1987).

In Florida, the landlord-tenant relationship imposes a nondelegable duty of care upon a landlord who undertakes to make repairs or improvements for the benefit of a tenant. See Easton v. Weir, 125 So.2d 115 (Fla. 2d DCA 1960). A landlord "owes a nondelegable duty to the tenant to not create an unsafe condition on the premises either temporary or permanent by any affirmative action." Id. at 121. The landlord cannot shift his responsibility to an independent contractor; he is liable to the tenant for the contractor's negligence to the same extent as if he had done the work himself. See id.
However, this theory was not raised below. The court submitted the case to the jury on the theory that Suarez had negligently selected the contractor. Therefore, we consider only that theory in this appeal.